UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CREDIT SUISSE SECURITIES (USA) LLC, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-1470 |
| | § | |
| NEAL DAVID CARLSON, | § | |
| | § | |
| *Respondant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to reconsider filed by respondent Neal David Carlson. Dkt. 20. Carlson seeks reconsideration of the court's order denying his motion to vacate an arbitration award. *Id.* He contends that the court relied on an incorrect standard due to a "subtle by significant distinction [that] has been inadvertently 'lost in translation.'" Dkt. 20. Petitioner Credit Suisse Securities (USA) LLC ("CSS") responded that Carlson did not establish a manifest error of law and that the court applied the correct standard. Dkt. 22. After considering the motion, the response, the court's order denying the motion to vacate and briefing relevant to that order, and applicable law, the court is of the opinion that the motion to reconsider should be DENIED.

**I. LEGAL STANDARD**

A party may file a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment. *Id.* A motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule

59(e) allows parties "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. An "unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

## II. BACKGROUND, ANALYSIS, AND CONCLUSION

CSS filed a petition to confirm an arbitration award in its favor and against Carlson on April 22, 2019. Dkt. 1. Carlson moved to vacate the award on May 13, 2019, and CSS filed a response on May 30, 2019. Dkts. 9, 12. The parties also filed a joint proposed Rule 16 scheduling order on May 29, 2019, in which they provided a proposed schedule for briefing on the motions to confirm and vacate. Dkt. 11. In accordance with this agreed schedule, CSS filed a petition in support of confirmation on September 11, 2019, Carlson filed a response on October 6, 2019, and CSS filed a reply on October 10, 2019. Dkts. 14, 15, 16. Carlson filed a reply to CSS's response to the motion to vacate on October 15, 2019. Dk. 17.

The court issued a memorandum opinion and order denying the motion to vacate and granting the motion to confirm on January 2, 2020. Dkt. 18. In that order, the court noted that Carlson argued that the presiding chairperson of the arbitration panel failed to disclose that he had done some work on a lawsuit in which an attorney from the firm Hoover Slovacek was opposing counsel. *See id.* Carlson's counsel for the arbitration had filed a notice with the arbitration panel that they had moved to the Hoover Slovacek firm on December 31, 2018. *See id.* Carlson requested that the court vacate the award issued in favor of CSS due to the failure to disclose a potential conflict of interest, and he also argued that some of this arbitrator's rulings evidenced his partiality and were grounds

for vacatur. *Id.* The court found that Carlson did not meet the stringent burden required to overturn an arbitration award for evident partiality and that the adverse rulings outlined by Carlson provide some minimal support for Carlson's theory but were not sufficient to demonstrate bias. *Id.*

In his motion to reconsider, Carlson argues that the court erred in requiring him to show that "a reasonable person would have to conclude that the arbitration panel was partial" because that language is derived from cases involving an actual bias as opposed to nondisclosure. Dkt. 20. He points out that when the Fifth Circuit used this standard in *Cooper v. WestEnd Capital Management, LLC*, it quoted the standard from *Householder Group v. Caughran*, which used the "have to conclude" rule. *Id.* (citing *Cooper*, 832 F.3d 534, 545 (5th Cir. 2009), and *Householder*, 354 F. App'x 848, 852 (5th Cir. 2009)). He goes on to note that the *Cooper* court did not refer to *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006), which is the case that the *Householder Group* court cited for the "have to conclude" language, and that the *Weber* court referred to a case from the Second Circuit for the language, resulting in what Carlson contends is "some degree of distortion, as in a game of telephone." *Id.* Carlson goes on to point out that the *Weber* court was determining an actual bias claim rather than a nondisclosure claim, and he appears to concede that if the court were determining vacatur based on actual bias, then the "a reasonable person would have to conclude" standard is correct. *Id.* However, Carlson argues that if the case is based instead on nondisclosure, this standard should not apply—notwithstanding the *Cooper* court's use of the standard.

CSS argues that (1) Carlson has failed to establish a manifest error of law because Carlson makes an argument that he could have raised before; and (2) regardless, the court correctly applied the evident partiality standard in its order denying Carlson's motion to vacate. Dkt. 22.

3

Carlson's argument hinges entirely on the court's application of the standard the Fifth Circuit used in *Cooper*, which Carlson contends is not the appropriate standard in a failure to disclose case. *See* Dkt. 20. The court has reviewed *Cooper* again. In *Cooper*, the Fifth Circuit was considering an argument that "the award should be vacated because JAMS and the Arbitrator failed to make certain disclosures." 832 F.3d at 545. Here, similarly, Carlson argues that the arbitration award should be vacated because the an arbitrator failed to make certain disclosures. The Fifth Circuit, in setting the legal standard for determining if the award should be vacated for an alleged failure to disclose, quoted language from *Householder* that the party seeking vacatur "'must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial.'" *Id.* (quoting *Householder*, 354 F. App'x at 852). The Fifth Circuit also pointed out, again citing *Householder*, that the partiality must be "'direct, definite, and capable of demonstration rather than remote, uncertain, or speculative.'" *Id.* *Householder*, an unpublished opinion, was considering an "evident partiality on actual bias" claim when it used the "would have to conclude" language, and, as Carlson points out, it cited *Weber*, a case from the Northern District of Texas, in which the court was also trying to determine actual bias. *See Householder*, 354 F. App'x at 852; *Weber*, 455 F. Supp. 2d at 550. The *Weber* court points to *Morelite Constr. Corp. v. N.Y. City Dist. Council* for the legal standard. 455 F. Supp. 2d at 550. In *Morelite*, the Second Circuit crafted the standard "reasonable person would have to believe it provides strong evidence of partiality by the arbitrator" when wrestling with the appropriate standard for determining if there was evident partiality when an arbitrator did not disclose a familial relationship between the arbitrator and one of the parties to the arbitration. 748 F.2d 79, 84–85 (2d Cir. 1984). The Second Circuit spent considerable time in its opinion discussing "[e]xactly what constitutes 'evident partiality' by an arbitrator," which it determined was a "troublesome question." *Id.* at 82. It noted that "evident partiality" "requires a

4

showing of more than a mere 'appearance of bias,'" and reasoned that going with an "appearance of bias" standard would "render this efficient means of dispute resolution ineffective in many commercial settings." *Id.* at 82, 84. While "appearance of bias" was "too low," "'proof of actual bias'" was "too high." *Id.* at 84. The court thus struck the balance by concluding that "evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Id.* This court believes that its holding in the instant case is perfectly in line with the Second Circuit's analysis, which is where the "game of telephone" Carlson discusses started. However, even if the *Morelite* holding does not apply under the facts of this case, cases from the Second Circuit are not binding on this court.

Fifth Circuit cases, however, *are* binding on this court. The Fifth Circuit, in a published case (*Cooper*), determined that it was appropriate to apply the language from *Householder*, *Weber*, and *Morelite*, in a case involving an allegation of evident partiality for failure to disclose. This court cannot disregard the legal standard stated in a published opinion from the Fifth Circuit absent an earlier published opinion with a conflicting holding, a subsequent *en banc* opinion overruling the holding, or, of course, a U.S. Supreme Court opinion that changes the standard. *See Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998). The court therefore did not err in applying the legal standard enunciated in *Cooper*.

Carlson has not demonstrated any manifest errors of law or fact or presented any newly discovered evidence. He has therefore not shown that the court should exercise the extraordinary remedy of reconsidering its judgment. Carlson's motion for reconsideration is DENIED.

Signed at Houston, Texas on February 20, 2020.

_____
Gray H. Miller
Senior United States District Judge

5